UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LIZANDRO GUEVARA, #492155, | ) |
| Petitioner, | ) |
| v. | ) NO. 3:22-cv-00237 |
| GRADY PERRY, Warden, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Lizandro Guevara filed this habeas corpus action pro se, seeking relief from his 2011 convictions for sexual offenses against his minor stepdaughter. For the second time, the Court confronts the question of whether to stay proceedings in this case while Petitioner litigates evidentiary issues in state court. The evidence with which Petitioner now takes issue is the report of DNA test results obtained in 2010, which showed that he (and any male relative from the same paternal lineage) could not be excluded as a contributor of the male DNA detected in two samples collected from the victim's body. (See Doc. No. 11-5 at 19–21). As explained below, Petitioner's pending effort to obtain more accurate DNA testing in state court justifies a temporary stay of proceedings in this case.

### I. BACKGROUND

By Order entered September 8, 2023 (Doc. No. 34), the Court denied a trio of motions filed by Petitioner, the last of which was his Motion to Hold the Instant Habeas Corpus Proceedings in Abeyance pending the resolution of state-court proceedings in coram nobis. The Court found that, although the interests of comity and judicial economy could justify a stay of federal habeas proceedings in this scenario, "those interests would not be served by a stay in this case where, at

least at this point in time, there is no indication that the Davidson County Criminal Court has either reopened Petitioner's post-conviction proceedings or set an evidentiary hearing in response to Petitioner's coram nobis filing." (Id. at 6). Notably, the state coram nobis proceedings did not involve the DNA evidence against Petitioner.

Petitioner filed a Motion for Relief from the Court's September 8, 2023 Order and, in the same filing, a Motion for Delayed Consideration of this case pending the resolution of newly filed state court proceedings. (Doc. No. 35). In response to Petitioner's Motion for Relief, Respondent recognizes that relief from an interlocutory order may be granted under Rule 54(b) of the Federal Rules of Civil Procedure, but argues that such relief is improper here because Petitioner seeks such relief based *not* on the litigation of coram nobis proceedings (which had concluded by the time the Motion for Relief was filed), but on the litigation of new motions in the trial court. Those new motions sought (1) post-conviction DNA analysis under the Post-Conviction DNA Analysis Act of 2001, Tenn. Code Ann. § 40-30-301 et seq., and (2) to reopen post-conviction proceedings. The response points out that the state trial court denied Petitioner's new motions just a few weeks after he filed his Motion for Relief from this Court's Order. (See Doc. No. 39-4, Davidson County Criminal Court Order filed Nov. 7, 2023).

Petitioner replied to Respondent's position by focusing on his Motion for Delayed Consideration of this habeas case, and effectively abandoning his Motion for Relief except as it relates to the Court's earlier denial of the requested stay. (See Doc. No. 44 at 1 ("At its core," Petitioner's intention before the Court is to seek "relief from judgment denying his request for a stay of the instant proceedings.")). He points out that he has taken an appeal from the Davidson County Criminal Court's November 7, 2023 Order denying relief under the Post-Conviction DNA Analysis Act, and asks that this Court "grant[] him a stay while the [Tennessee Court of Criminal

2

Appeals] resolves this dispositive issue regarding DNA evidence which excludes him as the donor" of the sample used against him at trial. (Doc. No. 44 at 4–5; see also Doc. No. 45-20 (Petitioner's Notice of Appeal filed Nov. 20, 2023)).

## II. DISCUSSION

As of the date of this Order, Petitioner's appeal from the denial of post-conviction DNA relief remains pending before the Tennessee Court of Criminal Appeals. Briefing was completed on May 1, 2024, and the matter was submitted to the panel on July 9. See https://pch.tncourts.gov/CaseDetails.aspx?id=88170&Number=True (last visited July 22, 2024). Petitioner appears to be arguing before the state appellate court that post-conviction proceedings should be reopened so that he can secure more sophisticated testing of the DNA evidence collected from the victim—testing which, unlike the tests conducted in 2010, could definitively establish that he was not the source of that DNA, rather than that he could not be "excluded as a contributor" of the DNA. (Doc. No. 11-5 at 21). As he puts it, while the "YSTR analysis" used on his genetic sample only examined the Y-chromosome and therefore yielded results "that are less specific and only enable[d] the analyst to conclude that the suspect and his paternal relatives cannot be ruled out as contributors," he now requests "the more advanced autosomal DNA tests" "which could specifically EXCLUDE petitioner as a donor of the sample found and used to prosecute him." (Doc. No. 44 at 2–4). This request dovetails with Petitioner's contention before this Court and in state coram nobis and DNA-related proceedings that the actual perpetrator of the crimes of which he was convicted—the victim's biological father—was implicated in a recently unearthed written statement attributed to the victim's younger brother.[1] (See Doc. No. 35-1 at 10). The issue before

---

[1] At the time of its ruling on Petitioner's original motion to stay these proceedings, the Court relied on Respondent's expression of doubt—based on the record that had to that point been produced to counsel—that the "supposed statement" of the victim's brother even existed. (See Doc. No. 34 at 4–5 & n.4). That doubt has now been erased, as the brother's statement has been produced and filed under seal on the record

3

the Tennessee Court of Criminal Appeals would, if resolved in Petitioner's favor, result in remand to the post-conviction trial court to conduct the new DNA analysis and, if that analysis yields results favorable to Petitioner, a new post-conviction hearing. See Tenn. Code Ann. § 40-30-312.

These circumstances cast a different light on Petitioner's desire for a stay of this habeas case. Although the post-conviction trial court denied Petitioner's application for DNA analysis under Tenn. Code Ann. § 40-30-304, in doing so it noted that prior testing of Petitioner's DNA against "semen [that] was recovered from the victim's genitalia" was "less than ideal." (Doc. No. 39-4 at 2). In Hodge v. Haeberlin, 579 F.3d 627 (6th Cir. 2009), the Sixth Circuit declined to stay a habeas petitioner's appeal pending the outcome of DNA testing, but it did so under facts that are notably opposed to those presented here:

> Hodge's motion to stay the proceedings and hold them in abeyance is denied. Several factors counsel against delaying resolution of this petition. First, we note that no DNA or biological evidence was used against Hodge at trial, nor can the tests now being conducted exonerate him. This is not a situation where, for instance, the prosecution established some weak genetic link, such as a blood-type match, which Hodge now seeks to disturb with more accurate testing. To the contrary, the jury knew that no DNA evidence linked Hodge to the scene. Further, the results of the new DNA testing cannot exclude Hodge from the crime scene. The items that will be tested are not the sort that must necessarily come from the perpetrator of the crime. The material to be tested here includes several hairs, items used to bind the victims, and blood swabs taken from one of the victim's hands. In a rape case where seminal fluid submitted for analysis must necessarily have come from the attacker, tests would be exonerating if they found no genetic match between the evidence and a sample from the accused. Here, however, the most the court could ascertain by waiting for the tests is that Hodge and his co-defendants were not the source of several hairs that did not necessarily come from the attackers. ... The tests therefore cannot put Hodge in a fundamentally different situation than he was in at trial, when no DNA evidence linked him to the scene. … [T]he inability of DNA testing to exonerate Hodge and the fact that this evidence could have been discovered previously make it unlikely that the outcome of the tests will lead to any further state-court action for which this court should wait.

---

of this case. (Doc. No. 43). Although it appears that the statement was produced to the defense just prior to trial in 2011 (see Doc. No. 39-1), it was not made available to Respondent's counsel for production on this record until November 2023. (See Doc. No. 41 at 5–6 & nn. 1–2).

Id. at 636–37. In the case at bar, under facts which appear to be largely the opposite of the facts before the Hodge court (e.g., in this case DNA evidence *was* used against Petitioner at trial, and more accurate DNA testing of those semen samples is now being pursued in order to potentially exclude him as the rapist), it is reasonable to conclude that the opposite ruling on the appropriateness of a stay of habeas proceedings may be in order.

As has previously been noted, the Court in an appropriate case may stay habeas proceedings in the interests of comity and judicial economy, even if the claims of the Petition are ripe for ruling. See Stevens v. Nagy, No. 19-11069, 2021 WL 1248294, at *2 (E.D. Mich. Apr. 5, 2021) (noting that "[a] federal district court has the authority to stay a fully exhausted federal habeas petition pending the exhaustion of additional claims in the state courts") (citing Nowaczyk v. Warden, New Hampshire State Prison, 299 F.3d 69, 77–79 (1st Cir. 2002)); see also Bowling v. Haeberline, 246 F. App'x 303, 306 (6th Cir. 2007) (noting that "[a] court is entitled to delay decision [on exhausted claims] when considerations of comity and judicial economy would be served") (quoting Nowaczyk, 299 F.3d at 83). In this case, Petitioner's reasons for seeking a stay have changed, and the difference between delaying adjudication of this habeas case while waiting for a coram nobis court's ruling on new claims, versus waiting for an appellate ruling on the propriety of ordering a DNA test that could potentially exonerate Petitioner, is significant. Accordingly, in the interests of comity and judicial economy, the Court will stay these habeas proceedings pending the outcome of parallel state proceedings on Petitioner's request for relief under the Tennessee Post-Conviction DNA Analysis Act. Cf. Ramirez v. Davis, No. 7:18-CV-386, 2019 WL 4454399 (S.D. Tex. July 22, 2019), adopted, No. CV M-18-386, 2019 WL 4451372 (S.D. Tex. Sept. 17, 2019) (granting stay of proceedings in capital habeas case while state appellate courts decide petitioner's appeal from the denial of his motion for post-conviction DNA analysis

under Texas law); Green v. Walsh, No. 03CV00908 (GBD)(DCF), 2006 WL 2389306, at, *2, *10–11 (S.D.N.Y. Aug. 17, 2006) (reciting history of habeas case's stay while state trial and appellate courts considered rape convict's "post-conviction motion for a DNA testing order" under New York law).

### III. CONCLUSION

Accordingly, Petitioner's Motion for Relief from the Court's September 8, 2023 Order and for Delayed Consideration of this case pending the resolution of newly filed state court proceedings (Doc. No. 35) is **GRANTED IN PART** and **DENIED IN PART**. To the extent that it sought relief other than an order staying this case, the Motion is treated as withdrawn by Petitioner and is therefore denied. The Motion is granted to the extent that proceedings in this habeas case are hereby **STAYED** pending the outcome of state proceedings related to Petitioner's request for new DNA analysis.

The Clerk is **DIRECTED** to administratively close this case until further Order. Petitioner is **ORDERED** to notify the Court in writing whether he seeks to reopen this matter within **30 DAYS** after the pending state proceeding (and any appeal therefrom) is resolved. In the meantime, Petitioner **MUST** submit a status report advising the Court of the status of his state case six months from the date of entry of this Order and every six months thereafter until his state case is resolved. The Court cautions Petitioner that if he fails to comply with this Order, the Court may dismiss his case.

During the stay of proceedings ordered here, Respondent's filings at Docket Numbers 43, 47, 48, and 50 will remain under seal. The necessity for keeping them under seal may be revisited after the stay is lifted. The Clerk is **DIRECTED** to terminate as pending Respondent's motions at Docket Numbers 42, 46, and 49.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

7